# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 14-141V
### Filed: December 28, 2015

```
* * * * * * * * * * * * * * * * * * * * * * * *          PUBLISHED
PAIGE S. GOODINGS,                       *
                                         *          Special Master Hamilton-Fieldman
                     Petitioner,         *
v.                                       *          Contested Attorneys' Fees and Costs;
                                         *          Reasonable Basis.
SECRETARY OF HEALTH                      *
AND HUMAN SERVICES,                      *
                                         *
                     Respondent.         *
* * * * * * * * * * * * * * * * * * * * * * * *
```

Mark L. Krueger, Krueger & Hernandez, S.C., Baraboo, WI, for Petitioner.
Lynn E. Ricciardella, United States Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On February 19, 2014, Paige S. Goodings ("Petitioner") filed a petition pursuant to the National Vaccine Injury Compensation Program[2] (the "Program"). Petitioner alleged that Human Papillomavirus ("HPV") vaccinations administered on June 15, 2009, August 21, 2009, and July 9, 2010 caused her to develop premature ovarian failure ("POF"). Petition ("Pet.") at 1-2. Petitioner now seeks, pursuant to 42 U.S.C. § 300aa-15(e), an award for attorneys' fees and litigation costs. After careful consideration, the undersigned has determined to **grant the request** for the reasons set forth below.

---

[1] Because this decision contains a reasoned explanation for the action in this case, the undersigned intends to post this order on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 and note (2006)). In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information that satisfies the criteria in § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision. If, upon review, the undersigned agrees that the identified material fits within the requirements of that provision, such material will be deleted from public access.

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 et seq. (hereinafter "Vaccine Act" or "the Act"). Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

I.    Facts[3]

Petitioner was born on April 29, 1995 and received the vaccinations[4] alleged to have caused her POF on June 15, 2009, August 21, 2009, and July 9, 2010.  Petitioner's Exhibit ("Pet. Ex.") 1; Pet. Ex. 2.  Prior to vaccination, she was noted to be a well-nourished, healthy, well developed female.  *See generally* Pet. Ex. 4.

Petitioner experienced menarche[5] at age twelve and she had a normal menstrual cycle until 2009; Petitioner's last normal menstrual period was reported to have occurred in April of 2009.[6]  Pet. Ex. 3 at 1.  During a visit to the Wheaton Franciscan Medical Group on February 2, 2011, Petitioner was assessed to have secondary amenorrhea[7] and hormone, genetic, and blood testing was ordered.  Pet. Ex. 3 at 1-2.  Results of the testing indicated that Petitioner was unlikely to have, or carry, Fragile X syndrome.  Pet. Ex. 3 at 5.  Furthermore, Petitioner's blood work appeared normal, except for a high count of segmental neutrophils ("segs") and a low lymphocytes ("lymphs") count.  Pet. Ex. 3 at 6.  The results for luteinizing hormone and follicle stimulating hormone placed Petitioner in the postmenopausal category.  Pet. Ex. 3 at 8.

At a well-child check up on June 20, 2013, Petitioner's treating physician and nurse, Dr. Joseph N. Tzougros and Nurse Angela Schwartz, noted that Petitioner had normal menses for two years before her amenorrhea began.  Pet. Ex. 4 at 22.  Petitioner stated that she attempted to use birth control[8] to help with her condition; however, she suffered severe side effects.  *Id*.  She was referred to an endocrinologist to "help find the cause of her amenorrhea."  Pet. Ex. 4 at 24.

---

[3] A recitation of pertinent facts appears in this section.  However, the undersigned has not yet determined what qualifies as the first symptom or manifestation of premature ovarian failure. This decision will not serve to decide any questions of fact or law regarding premature ovarian failure.

[4] The vaccination record reflects that Petitioner received the HPV Quadrivalent vaccination.  Pet. Ex. 2.

[5] Menarche is "the establishment or beginning of menstruation."  *Dorland's Illustrated Medical Dictionary ("Dorland's")*, 1131 (32nd ed. 2012).

[6] This medical record was contradicted by a record from January 26, 2009; in this record, her father reported that she "has not had a period now for 11 months," and that they were seeking treatment from a chiropractor "to do adjustments in her mechanics to help with her return of menses."  Pet. Ex. 4 at 1.

[7] Secondary amenorrhea is "cessation of menstruation after it has once been established at puberty."  *Dorland's*, 59.

[8] The medical records indicate that Petitioner used Yaz to regulate her menstrual cycle.  Yaz is a typical of oral contraceptive comprised of drospirenone and ethinyl estradiol, two different types of hormones.  Highlights of Prescribing Information, http://www.yaz-us.com/ (last visited Dec. 7, 2015).

Petitioner visited an endocrinologist, Dr. Srividya Kidambi, on August 9, 2013 for "premature menopause." Pet. Ex. 5 at 1. In the history of present illness section from this visit's records, it was noted that Petitioner reported a "lack of menstrual cycle since 4/2009." Pet. Ex. 5 at 5. When elaborating on her menstrual history, she indicated that she began menstruating at age 12, in 2007, and had regular menses for one year. *Id.* However, she only had one cycle between 2008 and 2009 and stopped menstruating in April of 2009. *Id.* She explained that her physicians attempted to treat her with Yaz birth control and a progesterone withdrawal; however, her period did not return. *Id.* Dr. Kidambi's assessment was POF based on her reported symptoms and previous blood work. Pet. Ex. 5 at 6-7.

In a follow up visit with Dr. Kidambi on October 4, 2013, the reason for visit was listed as "other ovarian dysfunction" and Petitioner was instructed to continue taking oral birth control. Pet. Ex. 5 at 29-34. She continued to see Dr. Kidambi and her diagnosis of premature menopause remained consistent. *See generally* Pet. Ex. 5.

Petitioner was referred to a reproductive endocrinologist, Joseph Davis, D.O., who she saw on January 17, 2014. Pet. Ex. 5 at 64. He started her on transdermal estrogen replacement and ordered a variety of blood work and a bone density scan. Pet. Ex. 5 at 64-73. No cause for her condition was noted. Pet. Ex. 5 at 64-65.

## II.    Procedural History

Petitioner filed her petition on February 19, 2014, and medical record exhibit numbers 1 through 5 on May 6, 2014. Pet. at 1-2; ECF No. 6. This case was initially assigned to Special Master Millman, who, on May 7, 2014, issued an Order to Show Cause requiring Petitioner to explain why the case should not be dismissed. Notice of Assignment, ECF No. 2; Order to Show Cause, ECF No. 7 ("Show Cause Order"). In her Show Cause Order, Special Master Millman reviewed the pertinent facts of the case and observed that the timing of onset of Petitioner's allegedly vaccine-caused injury, as well as the nature of her onset symptoms, were unclear from the medical records.[9] Order at 2-4. During a telephonic status conference held on May 8, 2014, Petitioner's counsel stated that he would discuss the case with his client and her mother. Scheduling Order, ECF No. 8.

The case was reassigned to the undersigned on May 20, 2014. Order, ECF No. 9.

---

[9] According to Special Master Millman, "[t]he date on which petitioner's POF began is unlikely to be the date she finally had lab tests substantiating that she had premature ovarian insufficiency or premature menopause. In order to have filed her petition timely, the onset of petitioner's POF would have to be no earlier than February 18, 2011 (three years before she filed her petition on February 19, 2014), which is a mere month before the lab tested her blood for her levels of LH, FSH, and estradiol. It begs credulity that once petitioner stopped menstruating after April 2009, petitioner would allege onset of her POF one year and nine months later (no earlier than February 18, 2011) or one year and ten months later (at the time of the collection of her blood for testing in March 2011)." Show Cause Order at 4.

A telephonic status conference was held on June 11, 2014, during which the parties discussed the status of the case; during the conference, "the parties and the undersigned agreed that Petitioner shall file a Motion to Dismiss." Scheduling Order (Non PDF), dated June 11, 2014. On June 16, 2014, Petitioner filed an Unopposed Motion to Voluntarily Dismiss pursuant to Vaccine Rule 21(a), and the undersigned issued an Order Concluding Proceedings pursuant to Vaccine Rule 21(a) on the same day. Motion, ECF No. 11; Order, ECF No. 12.

Petitioner filed a Motion for Attorneys' Fees and Costs on August 5, 2014. Petitioner's Application for an Award of Attorney's Fees and Costs ("Motion"), ECF No. 14. Petitioner's counsel, Mark L Krueger, requested compensation for himself at a rate of $300 per hour and for his paralegal, Renee Nehring, at a rate of $150 an hour. Motion at 2. Mr. Krueger indicated that these rates were agreed to by Respondent, the Department of Health and Human Services, in previous cases, and that his total request for attorney's fees was $7,110.00. *Id*. Also, he requested reimbursement of $674.75 for costs incurred during this proceeding. *Id*. Hence, his request totaled $7,784.75. *Id*. at 3.

On August 20, 2014, Respondent filed a Response to Petitioner's Motion for Attorneys' Fees and Costs. Response to Petitioner's Application for an Award of Attorney's Fees and Costs ("Response"), ECF No. 15. Respondent argued that "at no point in the proceedings" did Petitioner have a reasonable basis under the Vaccine Act, which requires petitioners to have a reasonable basis for filing their claims in order to receive an award of attorneys' fees and costs. 42 U.S.C. § 300aa-15(e); Response at 1. Respondent argued that the reasonable basis requirement was not met here because the medical records indicate that Petitioner's condition may have predated the vaccination, because neither a treating physician nor an expert opined in favor of causation, and because her attorney knew about "the unfeasibility and untimeliness of the claim before filing the Petition." Response at 9-11.

Finally, Petitioner filed a Reply to Respondent's Response on September 9, 2014. Petitioner's Reply to Respondent's Response to Petitioner's Application for an Award of Attorney's Fees and Costs ("Reply"), ECF No. 16. Petitioner argued that her petition had a reasonable basis because the limited medical records available to her attorney at the time of filing indicated that she may have had a viable case; that she dismissed her case within a reasonable amount of time after learning that she did not have sufficient evidence; that, because the statute of limitations was approaching, her attorney felt it was necessary to file the case immediately; and that onset in cases of POF is generally difficult to ascertain. Reply at 6-8.

The undersigned held a status conference on August 12, 2015, at which the parties discussed the status of counsel's fee application. *See* Order, ECF No. 19. During the conference, Mr. Krueger maintained "that he had a reasonable basis to file the petition, and …. that he moved to dismiss as soon as it became clear that the claim wasn't viable." *Id*. Respondent argued that "there is a legal distinction between Mr. Krueger's behavior, which was reasonable, and the extent to which a reasonable basis existed for the claim itself." *Id*.

## III.    The Applicable Legal Standard

In addition to awarding compensation to injured vaccinees, the Program may award

compensation to attorneys who represent individuals in cases brought under the Vaccine Act, regardless of the outcome of the case. 42 U.S.C. § 300aa-15(a); 42 U.S.C. § 300aa-15(e). If a petitioner is successful, a special master is required to award reasonable fees and costs; if a petitioner is unsuccessful, "the special master 'may' award reasonable fees and costs." *Saxton v. Sec'y of Health & Human Servs.,* 3 F.3d 1517, 1520 (Fed. Cir. 1993). The Vaccine Act imposes two requirements on every attorneys' fees and cost request: the petition must be "brought in good faith and there [must be] a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e). This determination, explains the Act, is made by the special master or the Court. *Id.*

The Act does not elaborate on the meaning of the good faith and reasonable basis requirements, nor has the United States Court of Appeals for the Federal Circuit interpreted the terms in the context of a fee application from a non-prevailing petitioner. *See, e.g., Woods v. Sec'y of Health & Human Servs.,* 105 Fed. Cl. 148, 153 (2012) ("Neither the Federal Circuit nor [the United States] Court [of Federal Claims] has had occasion to define the meaning of 'reasonable basis' for purposes of fee awards under Vaccine Act."). However, special masters and judges of the Court of Federal Claims have held that the test to determine whether a case had a "good faith" basis is a subjective one; a petitioner is presumed to have a good faith basis for filing the claim. *Grice v. Sec'y of Health & Human Servs.,* 36 Fed. Cl. 114, 121 (1996) ("Petitioners are entitled to a presumption of good faith as is the government. Thus, in the absence of direct evidence of bad faith, the special master was justified in presuming good faith."). If a petitioner has "an honest belief that he has sustained a vaccine-related injury," the good faith standard is met. *Turner v. Sec'y of Health & Human Servs.,* No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).

"Reasonable basis," on the other hand, has been interpreted in several cases to be "an objective standard determined by the 'totality of the circumstances.'" *See, e.g., Chuisano v. United States*, 116 Fed. Cl. 276, 286 (2014). This somewhat amorphous standard has often been defined not by what it includes, but rather by what is lacking in cases in which a reasonable basis has been found not to exist. For example, reasonable basis does not exist when "fundamental inquiries are not made" by the attorney before filing a petition. *Di Roma v. Sec'y of Health & Human Servs.,* No. 90-3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Additionally, a case may have a reasonable basis when filed, but may lose reasonable basis during the pendency of the case. *Perreira v. Sec'y of Health & Human Servs.,* 33 F.3d 1375, 1376-77 (Fed. Cir. 1994); *McNett v. Sec'y of Health & Human Servs.,* No. 99-684V, 2011 WL 760314, at *6 (Fed. Cl. Spec. Mstr. Feb. 4, 2011). The burden lies with the petitioner to "affirmatively demonstrate a reasonable basis." *McKeller v. Sec'y of Health & Human Servs.,* 101 Fed. Cl. 297, 305 (2011).

Some of the factors considered when assessing reasonable basis include: "'the factual basis, the medical support, and jurisdictional issues', and the circumstances under which a petition is filed." *Chuisano v. United States,* 116 Fed. Cl. 276, 288 (2014) (citing *Di Roma v. Sec'y of Health & Human Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). Neither the fact that no medical records or supportive expert opinion were filed with the petition nor the fact that the claim was filed beyond the statute of limitations automatically negates a finding of reasonable basis. *Chuisano,* 116 Fed. Cl. at 288; *see also,*

*e.g., Cloer v. Sec'y of Health & Human Servs..,* 675 F.3d 1358, 1362 (Fed. Cir. 2012); *Austin v. Sec'y of Health & Human Servs..,* No. 10-362V, 2013 WL 659574, at *10 (Fed. Cl. Spec. Mstr. Jan. 31, 2013); *Lamar v. Sec'y of Health & Human Servs..,* No. 99-583V, 2008 WL 3845165, at *4 (Fed. Cl. Spec. Mstr. July 30, 2008).

In the present case, the undersigned finds that Petitioner had a reasonable basis for filing her petition for three reasons.  First, Petitioner filed her case close to the expiration of the time for filing a petition within the statute of limitations, thus constraining counsel's opportunity to conduct an appropriate pre-filing investigation.  Second, Petitioner's alleged injury is relatively novel, and Mr. Krueger could not have known what constituted the "first symptom or manifestation of onset" of that injury at the time he filed the petition.  Finally, because Petitioner voluntarily dismissed her case as soon as it became clear that there was no longer a reasonable basis for it, the undersigned finds that a reasonable basis existed throughout the pendency of the claim.

## IV.   Analysis

### a.   Petitioner had a reasonable basis for filing the claim in the absence of a complete set of medical records because the statute of limitations was about to run

Under the Vaccine Act, if a vaccine is administered after October 1, 1988, a petition for compensation must be filed within "36 months after the date of the occurrence of the first symptom or manifestation of onset [of the alleged vaccine injury]." 42 U.S.C. § 300aa-16(a)(2). This timing requirement, known as the statute of limitations, is strictly adhered to and is triggered by the first symptom or manifestation of onset, whichever occurs first.  *Markovich v. Sec'y of Health & Human Servs.*, 477 F.3d 1353, 1357 (Fed. Cir. 2007) ("A symptom may be indicative of a variety of conditions or ailments"; alternatively, "[a] manifestation of onset is more self-evident of an injury and may include significant symptoms that clearly evidence an injury.").

In the case at hand, Petitioner's counsel filed the petition on February 19, 2014 and alleged that Petitioner received the vaccines at issue on June 15, 2009, August 21, 2009, and July 9, 2010.  Pet. at 1.  In the petition, Petitioner that her first symptom or manifestation of onset was around February 21, 2011 when she "was seen at Wheaton Franciscan Medical Group for lack of menses, hot flashes, night sweats and weight gain." *Id.*  This was the only mention of Petitioner's symptoms in the petition; given the timing of those symptoms, the case would have been barred by the statute of limitations if it had been filed after February 21, 2014.  Because the case was filed on February 19, 2014, the claim was not time-barred and was allowed to proceed.

Some special masters have declined to consider the running of the statute of limitations in determining whether reasonable basis to file the petitioner existed.  *See, e.g., Brown v. Sec'y of Health & Human Servs.*, No. 99-539V, 2005 WL 1026713, at *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) ("The Court generally accepts skeletal petitions (those filed *sans* records) . . . . Yet, while such a filing is adequate to stop the running of the statute of limitations, it does not by itself establish a 'reasonable basis' within the meaning of the statute.").  The undersigned considers it

appropriate to give counsel the benefit of the doubt with regard to reasonable basis when a case is filed shortly before the expiration of the statute of limitations, at least where it is apparent that counsel's opportunity to conduct pre-filing investigation was limited.  *See, e.g., McNett v. Sec'y of Health & Human Servs.,* No. 99-684V, 2011 WL 760314, at *7 (Fed. Cl. Spec. Mstr. Feb. 4, 2011) ("Ms. McNett's attorneys had no time to request medical records, let alone any time to review the medical records") and *Hamrick v. Sec'y of Health and Human Servs.,* No. 99-683V, 2007 WL 4793152, at *5 (Fed. Cl. Spec. Mstr. Nov. 19, 2007) ("petitioners' attorneys are entitled to the benefit of the doubt when they file a petition just before the statute of limitations expires").  This interpretation of the term appears to comport with the purposes of the Vaccine Act.  *See, e.g. McNett v. Sec'y of Health & Human Servs.,* No. 99-684V, 2011 WL 760314, at *8 (Fed. Cl. Spec. Mstr. Feb. 4, 2011) ("the term 'reasonable' is a broad term, suggesting that Congress intended special masters to consider a wide spectrum of factors and that a lenient standard for reasonable basis will promote the public policy of having attorneys represent petitioners in the Vaccine Program.").

In the instant case, the petition was filed on February 19, 2014, two days before the statute of limitations was about to run.  Although the Petition was filed in the absence of medical records, the undersigned notes that they were not yet filed because not all records had been obtained.  Pet. at 1-2.  The petition is evidence that the initial inquiries were made in this case: the vaccines, alleged injury, and some symptoms were listed in the petition.  Pet. at 1-2.  The undersigned concludes that this is sufficient to satisfy the reasonable basis requirement.

> **b. Petitioner had a reasonable basis for filing the claim because the timing of her symptoms relative to vaccination was unclear until her medical records had been obtained and reviewed**

Reasonable basis is typically found to exist when "petitioners possess a reasonable belief that the first symptom of the alleged vaccine injury occurred within three years of filing their petition."  *Somosot v. Sec'y of Health & Human Servs.,* 120 Fed. Cl. 716, 720 (2015).

In the petition, Petitioner alleged that she had three HPV vaccinations in 2009 and 2010 before being diagnosed with POF in 2013.  Pet. at 1-2.  The first set of medical records, which were filed three months after the petition, confirmed that Petitioner started menstruating when she was twelve years old, that she had regular menstrual cycles for a year, that she had only one cycle between 2008 and 2009, that she had "no menses" starting in April of 2009, that her first dose of Gardasil was administered June 15, 2009, and that the POF diagnosis was made based on tests conducted in August 2013.  Pet. Ex. 3 at 1; Pet. Ex. 5 at 5-6.  Special Master Millman, the special master to whom the case was initially assigned, issued an Order to Show Cause in which she questioned whether the onset of Petitioner's condition predated her receipt of the HPV vaccinations.  Show Cause Order at 1.

However, in 2015, in a separate group of cases alleging POF as the vaccine injury, the undersigned held an onset hearing to determine what the "first symptom or manifestation of onset" might be in such a case.  At the time the petition in this case was filed, therefore, Petitioner's counsel was understandably uncertain about what symptoms are attributable to POF and about what symptoms would constitute onset for purposes of the Program's statute of

limitations.  Although the onset date is not based on "when a petitioner knew or reasonably should have known anything adverse about her condition," or when a petitioner knew or should have known a connection between the alleged injury and a vaccine, a petitioner must at least understand the symptoms of her condition in order to assert a date of onset.  Here, at the time the petition was filed, no decision had been issued upon which Petitioner could rely to assist her in determining her "first symptom or manifestation of onset."  Counsel's use of the date Petitioner had laboratory testing to confirm her diagnosis as the date of onset was therefore not unreasonable.

> **c.  The reasonable basis for Petitioner's claim did not change during its pendency; once she realized she did not have a viable claim, she voluntarily dismissed her case**

Reasonable basis is not only assessed at filing; whether reasonable basis exists can change throughout the pendency of the case.  *See Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) ("[W]hen reasonable basis that may have been sufficient to bring the claim ceases to exist, it cannot be said that the claim is maintained in good faith."); *Heath v. Sec'y of Health & Human Servs.*, No. 08-86V, 2011 WL 4433646, at *11 (Aug. 25, 2011) ("Whether there existed a reasonable basis for maintaining this petition is a more difficult issue, and the answer depends on the point in time examined.").  Although minimal records are sufficient when the petition is initially filed, "petitioner's statutory obligation to substantiate his theory with medical records or medical opinion … should also provide the minimal evidence necessary to supply a reasonable basis to continue."  *Heath,* 2011 WL at *11.

The undersigned finds that Petitioner had a reasonable basis when she initially filed the case, for the aforementioned reasons.  According to the billing records filed with Petitioner's Motion, Petitioner came to counsel only two months before he filed the case, and he continued to collect records for several months.  Motion to Voluntarily Dismiss at 4-9.  Petitioner's counsel appeared to have a complete understanding of Petitioner's condition only after he was able to obtain the majority of the medical records, at which point his client voluntarily dismissed her case.[10]  *Id.*  The undersigned finds that because Petitioner dismissed her case soon after she discovered that she did not have a basis for maintaining her claim, and that reasonable basis existed throughout the pendency of the case, up until the point of dismissal.  *See Rayner v. Sec'y of Health & Human Servs.,* No. 13-417V, 2015 WL 2358086 (Fed. Cl. Spec. Mstr. Apr. 20, 2015).

## V.    Conclusion

Having determined that Petitioner's counsel had a reasonable and good faith basis for filing the claim, the undersigned must now determine the amount of attorneys' fees and costs to be awarded.  As Respondent did not contest the amount requested by Petitioner's counsel in his

---

[10] *Compare Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *8-9 (Fed. Cl. Spec. Mstr. Mar. 26, 2014) (explaining that "[c]ounsel's representation of [Petitioner] began two years prior to the filing of the petition . . . . [therefore,] Petitioner's counsel still had adequate time to complete the pre-filing investigation.").

Motion, *see generally* Response, and that amount appears reasonable to the undersigned, that amount will be awarded.

In accordance with General Order #9, Petitioner's counsel represents that Petitioner has not incurred any costs in pursuit of this claim.  *See* General Order Number Nine Statement, ECF No. 20.  Accordingly, the undersigned hereby awards $7,784.75, representing reimbursement for attorneys' fees and costs, in the form of a check payable jointly to Petitioner and Petitioner's counsel, Mark L. Krueger.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of court **SHALL ENTER JUDGMENT** in accordance with terms of this decision.[11]

**IT IS SO ORDERED.**

/s/ Lisa D. Hamilton-Fieldman
Lisa D. Hamilton-Fieldman
Special Master

---

[11] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.